UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JEFFREY GRUNE,

                            Petitioner,

     v.                                                      9:05-cv-0691

WILLIAM MAZZUCA, Superintendent
of Fishkill Correctional Facility,

                            Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

**I.     INTRODUCTION**

       Petitioner commenced this action *pro se* pursuant to 28 U.S.C. § 2254 alleging Respondent is holding him in custody in violation of his federal Constitutional rights. Petitioner claims that: (1) his Constitutional right to a fair trial was impeded when the trial court judge held an *ex parte* meeting with Petitioner's expert witness and influenced her to not testify; (2) his right to a fair trial was denied when the prosecution withheld exculpatory material in violation of Brady v. Maryland, 373 U.S. 83 (1963); (3) the court should have *sua sponte* held a competency exam; (4) the court violated his due process rights when the blood alcohol test he allegedly was coerced into taking was admitted into evidence; and (5) his Sixth Amendment right to counsel was violated when the trial court relieved his three court-appointed attorneys.

## II.     BACKGROUND

On October 7, 2002, after being observed crossing traffic lines, Petitioner was pulled over on the suspicion that he was driving while intoxicated. A field sobriety test was administered, consisting of the horizontal gaze nystagmus test and the walk-and-turn test, both of which Petitioner failed. The arresting officer also testified at trial that Petitioner "appeared" intoxicated, that he could smell alcohol on the Petitioner and there was alcohol in the vehicle. Petitioner was arrested and read his Miranda rights, Miranda v. Arizona, 384 U.S. 436 (1996), after which he admitted to drinking "two beers" that evening. Petitioner then began to belch for 15-20 minutes which prevented the police from administering a chemical breathalyser test due to the belching bringing residual alcohol into his mouth. As a result, Petitioner was transported to Albany Medical Center for a blood sample to test his blood/alcohol content. Petitioner claims he was coerced into consenting to the blood sample. Petitioner's signature appears on the blood sample consent form with the words "no court order" and "told I must take field test" in his handwriting.

On August 11, 2003, Petitioner was convicted by a jury of two counts of Driving While Intoxicated in violation of N.Y. Veh. & Traf. Law §§1192 (2) and (3). Upon appeal, the Appellate Division, Third Department, reversed Petitioner's conviction of Driving While Intoxicated in violation of N.Y.Veh & Traf. Law §1192(2) and affirmed Petitioner's conviction of a violation of N.Y.Veh. & Traf. Law §1192 (3). People v. Grune,12 A.D.3d 944 (3d Dept. 2004). The § 1192(2) count was reversed due to a finding that the evidence of blood alcohol content (BAC) was admitted without proper foundation. The other count was affirmed based on the results of the field sobriety tests, Petitioner's admissions, and a finding that there was no significant probability of acquittal had the BAC been excluded. Grune,12 A.D.3d at 946.

Petitioner claims his right to a fair trial was violated when New York State Supreme Court Judge Teresi had an *ex parte* communication with Petitioner's expert witness, Sister Phyllis Herbert (Herbert).  Herbert is the director of the Albany Honor Court, a program of the State Division of Probation and Correctional Alternatives.  She had worked with Judge Teresi for several years.  Petitioner's counsel, Randall Kehoe (Kehoe), advised Judge Teresi that he intended to call Herbert as a witness.  During a lunch recess, Herbert went to Judge Teresi's chambers to discuss another case pending before him.  No one else was present during this meeting.  Herbert told Judge Teresi that she would be testifying that afternoon.  Even though Kehoe had informed Judge Teresi that Herbert would be called as a witness, Judge Teresi acted surprised and stated he was unaware Herbert "did that" and thought she normally remained "neutral".  Herbert told Judge Teresi she was asked to testify about Petitioner's blood/alcohol content.  Judge Teresi did not interrupt her or indicate to her that they should not discuss her intended testimony.  After speaking with Judge Teresi, Herbert decided she would no longer testify for Petitioner. Herbert told Kehoe that she had met with Judge Teresi and was concerned that if she were to testify it might affect her neutrality in Albany Honor Court matters.

When the trial resumed, Kehoe stated on the record that Herbert had abruptly withdrawn and requested a continuance to locate another expert witness.  Kehoe's request was denied.  Judge Teresi did not at any time, on or off the record, disclose to anyone his *ex parte* communications with Herbert.  Judge Teresi was later censured for the *ex parte* communications with Herbert. (N.Y. Comm'n. on Judicial Conduct Determination.)

## III.  STANDARD OF REVIEW

A federal court considering a habeas petition challenging a state court judgment is governed by 28 U.S.C. § 2254, as amended in 1996 by the Antiterrorism and Effective Death Penalty Act ("AEDPA").  A writ of habeas corpus will not be granted unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. §§2254(d)(1) and (2).  A state court adjudication is "contrary to clearly established federal law only if 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Rodriguez v. Miller, 439 F.3d 68, 73 (2d Cir. 2006) (alterations in original).  In addition, under the unreasonable application clause of the AEDPA, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

A federal claim will not be procedurally defaulted "unless the last state court rendering a judgement in the case clearly and expressly states that its judgement rests on a state procedural bar." Jones v. Stinson, 229 F.3d 112, 118 (2d Cir. 2000) (citing Harris v. Reed, 489 U.S. 255 (1989)).  "When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court." Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991).  "When there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst, 501 U.S. at 803.

With these standards in mind, the Court will address the Petition for a Writ of Habeas Corpus.

## IV.  DISCUSSION

### A. *Ex Parte* Communications

Petitioner claims he was denied a fair trial when Judge Teresi had an *ex parte* communication with his expert witness Herbert, which ultimately led to her withdraw from testifying.  As a result of the sudden withdrawal by Herbert, and the denial of a continuance, Petitioner claims he was denied the ability to present an expert witness.  Respondent argues that, while the *ex parte* communication by Judge Teresi with Herbert was inappropriate, Judge Teresi did not influence Herbert not to testify.

A defendant in criminal proceedings has a due process right to a fair opportunity to defend against the state's accusations. See Chambers v. Mississippi, 410 U.S. 284 (1973); Washington v. Texas, 388 U.S. 14 (1967).  The right to call a witness on one's behalf is recognized as an essential element to due process. Chambers, 410 U.S. at 294.  Therefore, when there is a "substantial government interference with a defense witness' free and unhampered choice to testify, [the] due process rights of the defendant [are violated]." U.S. v. Hammond, 598 F.2d 1008, 1012 (5th Cir. 1979) (citing U.S. v. Henricksen, 564 F.2d 197 (5th Cir. 1977)).  Such interference may involve "threats of prosecution, or other intimidating conduct, that was *designed* to intimidate." U.S. v. Pinto, 850 F.2d 927, 932 (2d Cir. 1988) (emphasis in original) (internal citations omitted.)

In Webb v. Texas, 409 U.S. 95 (1972), a trial court judge who singled out a defense witness for a "lengthy admonition on dangers of perjury" was held to have effectively driven the witness off the stand and deprived the petitioner of due process.  During the trial, the

judge made statements implying he suspected the witness would lie and assured the witness that if he lied he would be prosecuted. The judge told the witness that a sentence of perjury would be added to witness's present sentence and reduce his chances for parole. Similarly, in U.S. v. Morrison, 535 F.2d 233 (3d Cir. 1976), a prosecutor who threatened a defense witness with criminal charges should she testify was found to have influenced the witness not to testify and deprived petitioner of due process.

Petitioner's case is distinguishable from both Webb and Morrison. The *ex parte* communications between Herbert and Judge Teresi, while improper, did not include any direct or implied threats as to what consequences Herbert would face should she testify. Judge Teresi expressed surprise when Herbert told the Judge she would be testifying and stated he did not know she "did that" and that he thought she remained "neutral". While this Court finds these statements could potentially be interpreted as the Judge's disapproval of Herbert's decision to testify, the statements are not threatening. Furthermore, Herbert states in her affidavit that "at no time did Judge Teresi speak with [her] about the case or try to dissuade [her] from testifying in [petitioner's] trial." (Mem. in Opp. of Pet. for Writ of Habeas Corpus., 13) (alterations in original). Therefore, this Court finds that, the comments made by Judge Teresi were not "designed to intimidate". As a result, Petitioner has failed to provide the Court with sufficient evidence to demonstrate that the state courts' decision in dismissing this claim was "contrary to", or involved an "unreasonable application" of Federal law. 28 U.S.C. § 2254.

### B. Denial of Request for a Continuance

Petitioner also claims the trial court violated his right to due process when it denied the request for a continuance to locate another expert.

When claims are made that a state trial court deprived petitioner of the right to present a defense, the federal habeas court must determine whether the trial court's decision was "contrary to" or was an "unreasonable application" of clearly established Federal law. See Jones v. Stinson, 229 F.3d 112 (2d Cir. 2000); 28 U.S.C. § 2254.

It is undisputed that Herbert was called by Petitioner to testify about the rate at which a human body metabolizes alcohol.  Herbert was to show, through interpolation, that Petitioner's BAC at the time of the arrest was much lower than the BAC measured two hours later, and, therefore, that Petitioner had less than the minimum BAC of .10 needed to establish a violation of N.Y.Veh. &Traf. Law §1192 (2). (Mem. in Opp. to Pet. for Writ Habeas Corpus, 16).

The granting of a continuance is a matter within the discretion of the trial judge. See U.S. v. Ellenbogen, 365 F.2d 982 (2d Cir. 1966).  Therefore, a denial of continuance will not be disturbed unless a clear abuse is shown. See U.S. v. Cimino, 321 F.2d 509 (2d Cir. 1963).  "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the [Constitution]." Morris v. Slappy, 461 U.S. 1, 12, 103 S. Ct. 1610 (1983)(quoting Ungar v. Sarafite, 376 U.S. 575, 589, 84 S. Ct. 841 (1964); see Drake v. Portuondo, 321 F.3d 338, 344 (2d Cir. 2003).

Here, the denial of a continuance was not harmful to Petitioner's defense and not an unreasonable application of Supreme Court precedent.  The state court did not deprive Petitioner of the ability of cross-examining or rebutting the state's evidence or presenting his own witnesses.  Petitioner did not indicate the length of a continuance he claimed to have needed or the likelihood of finding another person who would be qualified to testimony and who would give testimony similar to that of Herbert.  The Appellate Division apparently

concluded that the denial of the request for a continuance did not deprive Petitioner of his constitutional rights. Petitioner does not point to any Supreme Court authority requiring the granting of a continuance, apparently unqualified in duration, where one of Petitioner's own witnesses decides not to testify. Thus, the Court finds that there was no unreasonable application of federal constitutional law. See Ungar, 376 U.S. at 590-91; Drake, 321 F.3d at 344; Grotto v. Herbert, 316 F.3d 198, 206-07 (2d Cir. 2003).

Further, it was not unreasonable to conclude that Herbert's testimony was neither relevant nor material to Petitioner's defense - at least as to he crime of conviction. Unlike N.Y.Veh. & Traf. Law §1192(2), a violation of N.Y.Veh. & Traf. Law §1192(3) does not require evidence of the defendant's BAC. See N.Y.Veh. & Traf. Law §1192(3); see also N.Y. Veh. & Traf. Law § 1192(3) commentary ("Because there is no chemical test involved in § 1192(3), the charge of driving while intoxicated must be proved by evidence leading to the conclusion that the driver had imbibed alcoholic beverages to the extent that the consumption of alcohol rendered the driver incapable of giving that attention and care to the operation of his automobile that a man of prudence and reasonable intelligence would give."); People v. Steele, 661 N.Y.S.2d 908, 910 (2d Dept. 1997); People v. Lundell, 24 A.D.3d 569, 570 (2d Dept. 2005) (holding that testimony from police officers that defendant "who had been driving erratically, had watery and bloodshot eyes, slurred speech, smelled of alcohol, and failed two sobriety tests. . . was legally sufficient to support the defendant's conviction under [N.Y.Veh. & Traf. Law] §1192(3) beyond a reasonable doubt."); People v. Miller, 199 A.D.2d 692, 605 N.Y.S.2d 160 (3 Dept., 1993), appeal denied 82 N.Y.2d 928, 610 N.Y.S.2d 180, 632 N.E.2d 490 ("Vehicle and Traffic Law § 1192(2) and § 1192(3) are separate crimes having distinct elements, namely 1192(2) is based upon a defendant's blood alcohol content while 1192(3) is

based upon the manner defendant operated his vehicle and his condition."). As the Appellate Division found, and as the record supports, even excluding the BAC evidence altogether, there was ample other evidence upon which a jury could have found Petitioner to be guilty beyond a reasonable doubt. The arresting officer testified as to the sobriety tests Petitioner failed, the smell of alcohol on Petitioner, the presence of alcohol in the vehicle, and the statements made by Petitioner concerning his alcohol consumption. In accordance with the language of the statute[1] and Lundell, this witness testimony is sufficient to establish a violation of N.Y.Veh. & Traf. Law §1192(3). As the Appellate Division found, had Herbert's testimony been admitted (or that of a similar expert), it would not have resulted in a significant probability of acquittal on the N.Y.Veh. & Traf. Law §1192 (3) charge (the only charge before this Court).[2] Testimony regarding Petitioner's BAC at the time of arrest is neither relevant nor material to a conviction of N.Y.Veh. & Traf. Law §1192(3). Therefore, Judge Teresi's denial of a continuance to locate another expert witness to testify about the Petitioner's BAC was not a violation of Petitioner's due process right to present a defense in relation to the remaining charge and was not contrary to or an unreasonable application of federal law.

### C. Brady violations

Petitioner next claims the prosecution violated his right to a fair trial when the Court had an *in camera* review of the "DWI video log"[3] and denied the request by Petitioner to

---

[1] N.Y.Veh. & Traf. Law §1192(3) states, "Driving while intoxicated. No person shall operate a motor vehicle while in an intoxicated condition."

[2] The charge of a violation of N.Y.Veh. & Traf. Law §1192(2) was reversed on appeal.

[3] The videotape log is a log of videotape recordings and consists of a chart with columns for the defendant's name, the date, the arrest number, "start info." and "end info".

review the log, informing him that the log was complete.[4] The videotape log referenced the videotape admitted at trial by the prosecution. Petitioner wanted to view the log in an effort to exclude the evidence based on a theory that the videotape log was not kept in the ordinary course of business. Petitioner was provided a redacted copy of the videotape log that included the entry concerning him, but excluded the entries identifying other videotaped individuals. While incarcerated, Petitioner obtained a copy of the unredacted videotape log via a Freedom of Information Act request and claims the log is incomplete. Petitioner claims he was misled by the court's statement that the unredacted log was complete.

The Albany County Court held this claim was procedurally barred due to Petitioner's failure to raise it in a prior motion to vacate his convictions, and, in the alternative, the court held the videotape log was not Brady material and no Constitutional error occurred. (See Albany County Court decision, January 14, 2005). Petitioner was denied leave to appeal by the Appellate Division without opinion.

A review by this court is not barred as the Appellate Division adopted the County Court's decision which was not based solely upon a state procedural bar. 28 U.S.C. § 2254. When claims are made that a trial court made an evidentiary error, the habeas court must determine whether the trial court's decision was "contrary to" or was an "unreasonable application" of clearly established Federal law. See Stinson, 229 F.3d 112; 28 U.S.C. § 2254.

For the Court to determine whether the ruling was "contrary to" or an "unreasonable application" of federal law, the alleged Brady violation must be analyzed. To establish a

---

[4] Upon Petitioner's request to view the log, Judge Teresi responded, "I will tell you this. That there is information contained in the end, the information column on the other entries, which is what you asked so that you don't have to see the video tape log. That is my ruling." (People v. Grune, Trial Transcript p. 48).

Brady violation, a defendant "must show, *inter alia*, (1) that the government failed to disclose favorable evidence, and (2) that the evidence it 'suppressed' was material." U.S. v. Payne, 63 F.3d 1200, 1208 (2d Cir. 1995); see U.S. v. Bagley, 473 U.S. 667 (1985); Brady, 373 U.S. 83. Suppressed evidence is material when "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." U.S. v. Madori, 419 F.2d 159 (2d Cir. 2005). This Court finds that Petitioner was not denied material information by the prosecution. The description of the log given by Judge Teresi, who reviewed the log, coincides with the actual log. (Pet'r. Traverse, P. 26.) It is unclear to the Court which entries Petitioner is claiming are incomplete, or how he was misled. Other than the entry concerning Petitioner, all other entries are complete. Id. Therefore, this Court finds that the copy of the unredacted log was not material evidence to Petitioner's defense and, therefore, is not Brady material. Because the "DWI videotape log" is not Brady material, Judge Teresi's refusal to allow Petitioner to view an unredacted copy was not contrary to or an unreasonable application of federal law. This claim is therefore dismissed.

### D. *Sua sponte* orders for competency exams

Petitioner next claims that the trial court should have *sua sponte* conducted a competency exam to determine whether Petitioner was competent to stand trial and that the court's failure to do so violated his due process rights. Respondent claims he is procedurally barred from raising this issue on habeas review because the claim was held procedurally barred by the Albany County Supreme Court in accordance with N.Y.C. P. L. §440.10 (2)(c). Petitioner was denied leave to appeal by the Appellate Division without opinion. Applying the

presumption stated in Ylst, the Appellate Division's unexplained decision is considered an adoption of the County Court's decision which was solely based on a state procedural bar. Ylst, 501 U.S. 797. Therefore, review by this Court is barred. 28 U.S.C. § 2254.

In the alternative, when claims are made that a state trial court deprived petitioner of the right to a fair trial, the federal habeas court must determine whether the trial court's decision was "contrary to" or was an "unreasonable application" of clearly established Federal law. Id. ; 28 U.S.C. § 2254. The Supreme Court held in Medina v. California, 505 U.S. 437 (1992), that a State may presume the defendant is competent and require him to prove his incompetence by a preponderance of the evidence. Therefore, a trial court must order a competency hearing sua sponte when there is "reasonable ground for believing that defendant may be incompetent to stand trial." Rollins v. Leonardo, 733 F.Supp. 763, 767 (S.D.N.Y. 1990). However, "[f]ailure to conduct [a] full competency hearing is not ground for reversal when defendant appears competent during trial." Leonardo, 733 F.Supp. 763. When a trial court is "satisfied from the available information that there is no proper basis for questioning the defendant's sanity" no competency exam is required. Id. This is the standard even when the defendant has a history of mental problems. People v. Sterling, 72 A.D.2d 611 (2d Cir. 1979).

Here, Petitioner claims the trial court was aware of his prior psychiatric care and current medications. Petitioner claims that his outbursts during trial and the statement by Petitioner's former counsel that Petitioner was a "complete lunatic" should have caused the court to consider *sua sponte* a competency exam. However, the statement that Petitioner is a "complete lunatic", when read in context, is a description by the attorney of Petitioner in

relation to his numerous correspondence with the attorney and not a reference to Petitioner's competency to stand trial. The verbal reactions by Petitioner to Judge Teresi's rulings occurred twice throughout the trial. (Pet'r. Traverse, P74,75) Petitioner claims the fact that Judge Teresi had instructed him not to make verbal reactions to his rulings after the first outburst and Petitioner made a subsequent outburst is evidence of his incompetency. However, a disregard of the Judge's instructions concerning Petitioner's "outburst" does not create "reasonable grounds" to suspect Petitioner is incompetent to stand trial. Leonardo, 733 F. Supp. 763. Therefore, the evidence tends to suggest that Petitioner was competent to stand trial and there is insufficient evidence to suggest otherwise.[5] As a result, the trial court's decision does not appear to be contrary to or an unreasonable application of federal law. This claim is therefore dismissed.

### E. Admission of BAC test results

Petitioner claims the trial court violated his due process rights when testimony about the BAC test he was coerced to take was admitted into evidence. Respondent's argue this claim should be dismissed because it does not present a federal constitutional issue.

When claims are made that a state trial court made an evidentiary error, the federal habeas court must determine whether the trial court's decision was "contrary to" or was an "unreasonable application" of clearly established Federal law. See Stinson, 229 F.3d 112, 28 U.S.C. § 2254. There is no indication that Petitioner was forced to provide a blood sample. The Appellate Division rejected this claim based upon the evidence that "he ultimately gave

---

[5]In addition, Petitioner was successful in obtaining a reversal *pro se* of the N.Y.Veh. & Traf. Law § 1192(2) conviction upon appeal.

his consent after equivocating and then being advised of the consequences of refusal."
Grune, 12 A.D.3d at 946. In any event, the Appellate Division reversed the N.Y.Veh. & Traf. Law §1192(2) charge because it found the BAC evidence to have been admitted without proper foundation. The Appellate Division upheld the N.Y.Veh. & Traf. Law §1192(3) charged because the BAC evidence was not required to support the charge due to the arresting officer's testimony regarding the sobriety field tests, Petitioner's statements and the other available evidence.  Therefore, this Court finds that the error of the trial court in admitting the BAC evidence without proper foundation was harmless error as to the remaining charge, and therefore was not an unreasonable application of federal law.  This claim is dismissed.

### F. Dismissal of court-appointed counsel

Lastly, Petitioner claims the trial court violated his right to counsel when it dismissed three of his court-appointed attorneys and he was not given a chance to be heard on the subsequent reassignments.  Respondent argues that the State Supreme court's decision that this claim was meritless and procedurally barred was based on independent and adequate state grounds and, therefore, federal review of the claim is prohibited.

Petitioner did not raise this claim on appeal and the county court, therefore, held the claim procedurally barred pursuant to N.Y.C.P.L. §440.10(2)(c).  The Appellate court denied Petitioner's application to appeal without opinion.  This claim is, therefore, barred.

Assuming the claim to be properly presented, it appears from the record that Petitioner had representation at the trial court level at all times. Upon the dismissal of Petitioner's third court appointed attorney, Petitioner retained counsel of his choice before jury selection.  Petitioner's Complaint appears to claim that the dismissals, without his

consent or input on reassignment, were in violation of his due process rights. However, attorneys retain the right to request dismissal and there is no Constitutional right to be heard on reassignments. Model Rules of Prof'l Conduct R. 1.16(b) (2002); see Pizarro v. Bartlett, 776 F. Supp. 815 (S.D.N.Y. 1991). In addition, Petitioner has failed to provide the Court with sufficient evidence to show he was substantially prejudiced and deprived of a fair trial due to the representation by the appointed or retained counsels. This Court, therefore, finds the trial court's dismissals were not "contrary to" or an "unreasonable application" of federal law. Petitioner's claim is therefore dismissed.

## IV.  CONCLUSION

For the foregoing reasons the Petition for Writ of Habeas Corpus is DENIED. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

Dated:   May 11, 2006

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge